### H. B. CLAFLIN COMPANY *v.* BRETZFELDER.

Opinion delivered April 27, 1901.

1. ATTACHMENT—CORPORATE SHARES.—Delivery of a writ of attachment containing a garnishment clause to the president of a corporation is not sufficient to fix a lien on any stock in such corporation held by the debtor; the statute (Sand. & H. Dig., §§ 336, 3057) providing that an attachment or execution may be levied upon corporate shares by the sheriff delivering to one of certain officers named a copy of the order with a notice or certificate that he has levied upon such shares.   (Page 277.)

2. SAME.—Where an attachment was sought to be levied upon the debtor's corporate stock by means of a writ of garnishment served on the corporation, and the corporation appeared and admitted the debtor's ownership of the stock, and, the debtor failing to appear, judgment by default against him was entered, the attachment plaintiff acquired no lien as against a creditor who subsequently caused the debtor's shares to be levied upon and sold under execution.   (Page 279.)

3. PLEDGE—WAIVER.—Where a pledgee of stock elected to have it levied upon under attachment and condemned as the property of the pledgor, she thereby waived her right to enforce the pledge, although the attachment proceeding was ineffectual for want of a proper levy on the stock.   (Page 279.)

Appeal from Jefferson Chancery Court.

JOHN M. ELLIOTT, Chancellor.

*Crawford & Hudson, Austin & Taylor, Reinberger & Ewing,* for appellant.

An equity of redemption in mortgaged or pledged chattels cannot be reached under execution or attachment. 42 Ark. 236; 58 Ark. 289-291; 64 Ark. 213; 17 Mich. 141. Whether appellee claims the shares under an attachment or an attachment-garnishment depends solely upon the acts of the officers under her writ, and is immaterial. Shinn, Attach. § 314; Drake, Attach. (4th Ed.), § 424. The only evidence of this is his return. 40 Ark. 141. As to law governing seizure and sale of shares of stock under an order of attachment at that time, see Sand. & H. Dig., §§ 3057, 3058, 3059. Under these sections appellee could acquire an attachment lien on the shares only by a strict compliance with the terms of the statute. Shinn, Attach. § 8; 3 Ark. 509. The return does not show a compliance therewith. 64 Ark. 111; 75 N. W. Rep. (Mich) 952; 46 N. W. Rep. 750. Nor does it describe any of the shares in controversy as having been levied upon. Sand. & H. Dig., § 6003; Drake, Attach. (4th Ed.), § 208, 205; Shinn, Attach. § 223-231; Freeman, Ex. §§ 353, 355. An attachment is merely a preliminary execution. 23 Ark. 287; 52 Ark. 290. A new statute intended to cover the whole subject embraced will repeal an older law on the subject. 11 Wall. 88; 107 U. S. 445; 134 U. S. 206. The corporate property belongs to the corporation, and not to the individual stockholders. Wade, Attach. § 408. The return does not show that the sheriff delivered to the garnishees a copy of her order of attachment, with a notice specifying the property attached. 79 Ky. 509; 3 Ark. 509; Rood, Gar. §§ 257, 275, 277, 278; 87 Ky. 56. The return does not describe the property attached. Sand. & H. Dig., § 346. The schedule removes any doubt as to the extent of the attachment. 3 Ark. 509. The shares could be garnished only in the manner pointed out by the statute. Drake, Attach. (4th Ed.), § 451 *b;* Rood, Gar. § 485; 3 Ark. 509; 14 S. W. Rep. 827; 72 Ia. 696. Appellee lost any attachment lien she may have had by delay in suing out her order of sale on the judgment. 53 Ark. 98; Drake, Attach. (4th Ed.), § 224 *a;* 37 Cal. 121. The lawful period is three years. Sand. & H. Dig., § 4205. The execution must be sued out within the period. Shinn, Attach. § 454, 325, 327; 3 Am. & Eng. Enc. Law (2d Ed.), 243; 10 Johns. 129; 5 Col. 247; 44 Pac. Rep. 373; 54 S. W. Rep. 342. The office of an execution is to enforce a debt, and not to create a security. 9 Cent. Law Jour. 347. A party delaying to sue out his execution may impair his rights. 29 Ark. 85; 59 Ark. 307; 73 Hun, 179 (25 N. Y. Sup. 875); 4 Abb. Pr.

(N.Y.) 393; Drake, Attach. § 262 (4th Ed.); 2 Cranch (N. S. C C..), 538; 18 Ark. 315; 15 Ark. 274; Freeman, Judg. § 202; 44 Am. Dec. 780; 14 Ohio St. 18; Burrill, Ass. (3d Ed.), § 218-225; 60 Ark. 50. An order of attachment is a provisional remedy. 52 Ark. 296. Garnishment proceedings are independent suits. 62 Ark. 616. The appellee obtained no judgment against the garnishee, but abandoned both actions. Shinn, Attach. § 335; 45 Ark. 271; 48 Ark. 349; 52 Ark. 130; 60 Ark. 50; 62 Ark. 616; 3 Mason, 247. An attachment issued for a larger sum than is owing is void. 11 S. W. Rep. 1123; 3 Met. (Mass.), 44; 43 N. J. Eq. 90; 3 Rich. Eq. 412; 62 Ark. 171; 112 Mass. 180; 1 Pick. (Mass.), 204; 12 Pick. (Mass.), 388; 3 Mich. 531; 74 Texas, 73; 75 Texas, 278; 17 Pick. 213. Where one has an election between inconsistent causes of action, he is held to that which he first adopts. 29 Ind. App. 654; 68 Iowa, 460; 18 Am. & Eng. Enc. Law, 727; 65 Ark. 380; 64 Ark. 213; 85 Tenn. 332; 85 Ky. 503; 26 Ill. App. 238; 46 N. W. 72; 23 Mo. App. 436; 26 So. Rep. 136; 45 Ark. 40; 52 Ark. 389. Appellee's alleged pledge was void. 64 Ark. 415; 66 Ark. 98; Sand. & H. Dig., § 1338, 1342, 1339, 1353, 1355. These provisions stamp as fraudulent sales or pledges of tangible personal property unaccompanied by the delivery of possession. 6 Conn. 552; 71 Ia. 270; 2 Conn. 579; 5 Gray, 373; 6 So. Rep. 364. If shares are attached, the writ also binds the dividends. 35 Fed. Rep. 395, 38 Ark. 537. Attachments, restraining orders, etc., are merely ancillary to a pending action, and if granted or issued before the commencement of the action, are *coram non judice* and null and void. 47 Kans. 236, 366; 1 Am. & Eng. Dec. Eq. 658; 86 Ky. 240. An action is commenced by filing a complaint and issuing summons thereon. Sand. & H. Dig., § 5657; 57 Ark. 229; 57 Ark. 459; 62 Ark. 401. If a sheriff releases an attachment with or without plaintiff's consent, its lien is discharged. Shinn, Attach. § 256, 257-260; Drake, Attach. (4th Ed.), § 282 *et seq.;* 3 Am. & Eng. Enc. Law (2d Ed.), 227, and cases cited note 4; 29 Mo. App. 167.

*White & Altheimer, J. M. & J. G. Taylor,* for appellant.

Appellee did not forfeit her right to sell the attached property by her delay in doing so. 73 Hun, 179; 90 Mo. 239-251. Laches must amount to abandonment. 13 Gratt. (Va.), 354, 362; 4 Munf. (Va.), 332. An equity of redemption in mortgaged or

pledged chattels cannot be reached under execution or attachment. 42 Ark. 286; 58 Ark. 389; 64 Ark. 213; 17 Mich. 141.

*Austin & Taylor, Crawford & Hudson, Reinberger & Ewing,* for appellant in reply.

The return on appellee's writ did not create an attachment lien. 64 Ark. 111.

BATTLE, J. The property in controversy in this action "is 342 shares of the capital stock of the Standard Compress and Warehouse Company [which we shall hereafter call for convenience the 'Compress Stock'], originally evidenced by certificates numbered 23, 52 and 86, which were issued to Rosenberg & Miller for 200, 100 and 42 shares, respectively; and 420 shares of the capital stock of the Park View Land Company [which we shall hereafter call for convenience 'Park View Stock']' which were originally represented by certificates numbered 15, 16 and 17, issued to Felix M. Rosenberg for 100, 60 and 50 shares, respectively; and certificates numbered 18, 19 and 20, issued to Solomon Miller for 100, 60 and 50 shares, respectively."

Appellants claim them by virtue of levies thereon and sales thereof under executions issued upon judgments in their favor against Felix M. Rosenberg and Solomon Miller, who composed the firm of Rosenberg & Miller; and appellee, under an order of sale issued upon a judgment sustaining an attachment in her favor against the same persons.

On the 5th day of October, 1891, Rosenberg & Miller executed to Emelia Bretzfelder, the appellee, a promissory note, and thereby promised to pay her $4,646.37, and 8 per cent. per annum interest, on the first day of January, 1893, and transferred and delivered to her 200 shares of the Compress Stock and 100 shares of the Park View Stock to secure the payment of the same, but no transfer of the shares was made on the books of the corporation that issued the shares, or upon those of the office of the county clerk.

On the 3d of December, 1894, appellee, Emelia Bretzfelder, commenced an action in the Jefferson circuit court against Rosenberg & Miller, to recover of them the sum of $6,140.37, which included the amount due on the note for $4,646.37, and on the same day caused an order of attachment to be issued against their property, with a clause therein commanding the sheriff to summon the Standard Compress & Warehouse Company and the Park View Land Company to answer as garnishees in the action. This order

reached the hands of the sheriff on the same day it was issued, at 8:10 o'clock p. m., and he at 9 o'clock next following executed the same "by delivering a true copy thereof to A. Blum, president of the Park View Land Company, and by delivering a true copy thereof to M. W. Taggart, president of the Standard Compress & Warehouse Company, summoning the said corporations to answer as garnishees."

On March 25, 1895, the Park View Land Company filed its answer to said garnishment, in which it admitted that Felix M. Rosenberg was the owner of record of 210 of its shares of the par value of $25 each, evidenced by three certificates issued to him, all dated June 24, 1891, numbered 15, 16 and 17 for 100, 60 and 50 shares, respectively, and that Solomon Miller was the owner of record of 210 shares of its stock of the same par value, evidenced by its three certificates issued to him, also dated June 24, 1891, numbered 18, 19 and 20 for 100, 60 and 50 shares, respectively. And on the same day the Standard Compress & Warehouse Company filed its answer to said garnishment, in which it admitted that the firm of "Rosenberg & Miller" was the owner of record of 342 of its shares of the par value of $25 each, evidenced by three certificates issued to them—one No. 23, dated June 23, 1890, for 200 shares; one No. 52, dated June 27, 1890, for 100 shares; and one No. 86, dated June 15, 1891, for 42 shares.

On March 30, 1895, appellee recovered judgment by default against Rosenberg and Miller for the sum of $6,877.71, and at the same time the attachment was sustained, and all of the said stock in the Park View Land Company and in the Standard Compress & Warehouse Company aforesaid was condemned to be sold for the satisfaction of said judgment. The shares pledged to Emelia Bretzfelder to secure the payment of the note for $4,646,37 were included in the stock condemned to be sold. This was done because she was doubtful of the validity of the pledge, on account of the failure to transfer it to her on the books of the corporations and in the clerk's office.

On the 30th of March, 1895, the appellants also recovered judgments in the same courts against the same debtors for various amounts on which they caused executions to be issued on the 19th of September, 1898. On the same day, the 19th of September, 1898, the appellee caused a *venditioni exponas* to be issued on the judgment recovered by her on the 30th of March, 1895, commanding the sheriff to sell the stock in controversy to satisfy her judg-

ment. The executions sued out by the appellants first reached the hands of the sheriff. They caused him to levy on the stock in controversy to satisfy their executions and to advertise the same for sale on the first of October, 1898.

Upon the issue of aforementioned writs the appellants and appellee entered into a written contract in which the issue of said order of attachment, the recovery of said judgments, and the issue of executions thereon were recited, and agreed as follows:

"Now, this agreement is to show that the parties mentioned therein have agreed that the said Emelia Bretzfelder shall file forthwith a bill of interpleader in the chancery court of Jefferson county, Arkansas, against all the other parties herein mentioned, by which said suit it is contemplated that the rights of the several parties mentioned herein to said stock under their said executions shall be litigated and decided. It is further stipulated by the parties hereto that they will each file their several interventions or answers in said cause and assert their rights to said stock, or proceeds thereof, or right therein; that at said sales the said stock shall be purchased by Fred Hudson, as trustee for all the parties herein mentioned, who shall bid at such sale, if necessary to secure a purchase of said stock at said sale, any amount not exceeding 45 per cent. of the par or face value of the said Standard Compress & Warehouse Company stock, and not exceeding 25 per cent. of the Park View Land Company stock; that the said Fred Hudson shall hold the said stock so purchased as trustee for the parties herein mentioned as their rights shall hereafter be established by the said chancery court of Jefferson, or any court of final resort to which said suit may be carried, it being understood by all the parties hereto that no rights or priority of liens upon said stock, and no right to contest the right of any other party hereto to the same, is waived or impaired by this agreement, and it being the intention of the agreement that the said stock shall be purchased by the said trustee, who shall hold the same subject to the final adjudication of the said case and the settlement of the rights of the respective parties to this agreement."

The stock in controversy was sold by the sheriff, under the executions delivered to him, on the 1st day of October, 1898, and was purchased by Fred Hudson, as trustee, and is now held by him in that capacity according to the agreement.

Pursuant to the agreement, Emelia Bretzfelder brought a suit against the appellants in the Jefferson chancery court, on the 12th

of October, 1898, and alleged in her complaint, substantially, the facts we have stated, and asked that her lien or claim to the stock be declared superior to any of the claims of the defendants, and that they be restrained from interfering with her rights thereto.

The defendants answered the complaint, and, in effect, denied that the plaintiff acquired any lien on the stock in controversy by attachment or garnishment; and alleged that, if any of the stock were pledged to her, she lost and waived the pledge by her attempt to attach the same, and by having them condemned and sold, under attachment proceedings, to satisfy her judgment, and that they were entitled to the shares of stock in controversy.

After hearing the evidence adduced by all parties, which proved the facts we have stated, the chancery court adjudged as follows:

"First. That appellee held under a valid and subsisting pledge the 200 shares of Compress Stock evidenced by certificate No. 23 issued to Rosenberg & Miller, and 100 shares of Park View Stock evidenced by certificate No. 18 issued to Solomon Miller; that there were due and owing on the pledge debt $7,551.50; that appellants only had the right to redeem said shares by the payment of said debt; and perpetually enjoined them from questioning the fact of the pledge or the amount of the pledge debt, or appellee's right to hold the shares until the debt be paid."

"Second. That through her action at law against Rosenberg & Miller appellee acquired a right in the 342 shares of Compress Stock evidenced by certificates Nos. 23, 52 and 86, issued to Rosenberg & Miller for 200, 100 and 42 shares, respectively, and the 420 shares of Park View Stock, evidenced by certificates Nos. 15, 16 and 17, issued to Felix M. Rosenberg for 100, 60 and 50 shares, respectively, and Nos. 18, 19 and 20 issued to Solomon Miller for 100, 60 and 50 shares, respectively, prior and superior to the rights obtained by appellants under their actions at law against Rosenberg & Miller."

And the defendants appealed.

Did appellee acquire any lien on or title to the stock in controversy by attachment or garnishment? This question was virtually decided by this court in *Deutschman* v. *Byrne,* 64 Ark. 111. In that case it is said: "At common law the shares of a stockholder in the capital stock of a corporation were not subject to attachment or execution; but the statutes of this state make them liable to attachment. They are intangible and invisible; and can-

not be actually seized by an officer. There can be no visible change of possession as to them. To overcome this difficulty, the statute provides for a constructive seizure. It is obvious, therefore, there can be no seizure of them unless there be a substantial compliance with the statute providing how the seizure can be made: and that, if the statute is not complied with, there can be no valid sale by virtue of such seizure, and no title thereto can be acquired."

Section 336 of Sandels & Hill's Digest is as follows: "The order of attachment shall be executed by the sheriff or other officer without delay, in the following manner: * * * *Third.* Upon other personal property by delivering a copy of the order, with a notice specifying the property attached, to the person holding the same; or, as to a debt or demand, to the person owing it; or, as to stock in a corporation, or property held, or a debt or demand owing by it, to the chief officer, or to the secretary, cashier, treasurer or managing agent thereof, and by summoning the person or corporation to answer as a garnishee in the action."

Section 3057 is as follows: "Whenever an officer, having an execution or writ of attachment in his hands, shall levy on shares or stock in corporations, he shall make such levy or seizure by leaving a true copy of said writ with the president, secretary or cashier or other officer, with the certificate of the officer making such levy, that he levies upon and takes such rights or shares to satisfy such execution."

Under either of these sections, in order to attach such shares, it is necessary to deliver to one of the officers or agents named therein a notice in writing or certificate specifying the same. To enable the sheriff or other officer to make the levy, the statutes make it the duty of every person named above, to whom he shall apply therefor, to furnish him with a certificate of the number of shares of the defendant in the stock. *Id.* § 3056.

The order of attachment sued out by appellee was executed "by delivering a true copy thereof to A. Blum, president of the Park View Land Company, and by delivering a true copy thereof to W. M. Taggart, president of the Standard Compress & Warehouse Company, and by summoning the said corporations to answer as garnishees." No notice or certificate was delivered, and no property was attached; and the court was without authority to condemn any stock or shares to be sold to satisfy appellee's debt or judgment; and appellee acquired no lien or title to the stock in controversy by the attachment.

In the action instituted by appellee against Rosenberg & Miller, in which the order of attachment was issued, the defendants did not appear, and offered no resistance to the attachment in any way; and consequently appellee acquired no lien or title to the stock except that she acquired by conforming to the statute. The acts or answers of the garnishees in that case did not affect the rights of the defendants to the stock. Whatever they might have done or did respecting their own rights, they were powerless to do anything which affected other persons. *Gates* v. *Tusten* (Mo.), 14 S. W. Rep. 827; *Insurance Co.* v. *Friedman,* 74 Texas, 56; *Gage* v. *Maschmeyer,* 72 Iowa, 696; Drake, Attachments (17th Ed.), § 451b.

The effort of appellee, though ineffectual, to procure the attachment of the stock pledged to her, and a judgment·condemning the same be sold to satisfy her debt, was a waiver of the pledge. The rights acquired by a pledge and an attachment are inconsistent, and cannot be maintained by the same person at the same time.

In *Hickman* v. *Richburg,* 26 Southern Rep. 136, the court stated the facts as follows: "The evidence, without conflict, shows that the lumber which was levied upon by the plaintiff in execution was sold by the claimant to the defendant in execution on or about the 1st of February, 1898; that the claimant at the time of the contract of sale of said lumber, by the express terms of his contract with the defendant, reserved the title to the lumber until the payment of the purchase money was made. The plaintiff's execution was levied on the lumber in the possession of the defendant on the 15th day of March, 1898, and on the 16th day of March—the day following the levy—the claimant filed a sworn statement of his account against the defendant for the lumber, in the office of the probate judge of Coffee county, with the purpose and intention of fixing and creating a material man's lien on the lumber in question under the statute. This attempt on the part of the claimant to create a lien was ineffectual by reason of a failure to comply with all the requirements of the statute in the statement so filed." The court held that the attempt to establish a material man's lien was an abandonment of the title reserved in the sale; and said: "It would seem, from these authorities, that the question of election is not made dependent upon whether such election may be rendered effectual or not. Any unequivocal act on the part of the vendor, recognizing the title as

being in the vendee, will preclude such vendor from afterwards setting up title in himself; and it is also well settled that, when an election between inconsistent rights is once made, it cannot be afterwards revoked. It is clear that the claimant in this case could not, under the statute, fix a material man's lien upon property the title to which was in himself; and when he filed his claim and statement with the probate judge for the purpose of creating a lien upon the lumber in question, this was an unequivocal act on his part to treat the lumber as the property of the defendant in execution, and, of course, a waiver and abandonment of the title reserved on the sale."

In *Cox* v. *Harris,* 64 Ark. 213, it was held that "where the holder of a chattel mortgage brings suit upon the mortgage debt, and causes the mortgaged chattel to be levied upon under an attachment, which is prosecuted to a judgment against the mortgagor, he will be held to have waived his mortgage lien upon the property, and cannot subsequently assert it after the mortgagor has claimed the property as exempt." The court said: "Now, so long as the mortgage lien existed, the mortgagor, Harris, had no interest in the mule subject to attachment, for mortgaged personal property is not subject to execution or attachment for a debt of the mortgagor. *Jennings* v. *McIlroy,* 42 Ark. 236. But appellants had the right to waive their mortgage lien, and attach the property. The levy of the attachment amounted to an assertion by appellants that the property was subject to seizure and sale under the attachment. But, as this could not be true if the lien of the mortgage still existed, the levy of the attachment was the same as a denial on the part of appellants that the mortgage lien existed, and was in effect a waiver on their part of the lien created by the mortgage."

In *Adler-Goldman Commission Co.* v. *People's Bank,* 65 Ark. 380, it was held, that "by attacking an assignment as fraudulent," by suing out an attachment against the assignor, "a creditor preferred therein is held to renounce the benefit of his preference, and, upon the assignment being sustained, he cannot claim the benefit of such preference," on the ground that he "is not entitled to two inconsistent and adverse rights. One is necessarily a denial of the other. In such case he must generally elect which he will take, and an election of one is the surrender or rejection of the other. Having made an election with a knowledge of the facts, he is bound by it, and cannot withdraw it without consent."

In the case before us the property pledged was not subject to attachment or execution so long as it remained unredeemed, but the pledgee had a right to waive or abandon her pledge, and she did so when she undertook to seize it under an order of attachment and to have it condemned by virtue of the attachment to be sold to satisfy a debt owing to her. *Citizens' Bank* v. *Dows,* 68 Iowa, 460.

It follows, therefore, that appellee had no lien on or. title to the stock in controversy, and that the appellants are entitled to the same or the proceeds of the sale thereof.

The decree of the chancery court is, therefore, reversed, and the cause is remanded, with instructions to the court to enter a decree in accordance with this opinion.