## COOK *v.* MARTIN.

### Opinion delivered April 8, 1905.

1. RECEIVER—PURCHASE OF OUTSTANDING TITLE.—The general rule which refuses to permit a trustee to deal with the trust property in his own

behalf will debar a receiver appointed to hold attached property and collect rents therefrom from purchasing, as against the attaching creditors, a superior outstanding title to the property for the benefit of his wife. (Page 45.)

2. SAME—ENFORCEMENT OF TRUST.—Where a receiver appointed to hold attached property and collect rents therefrom purchased in the name of his wife a superior outstanding title, she, in a proper proceeding, will be decreed to hold in trust for the attaching creditors, but will be entitled to reimbursement out of the proceeds of the property of the amount expended for such title, with interest. (Page 48.)

3. TRUST—ENFORCEMENT WITHIN REASONABLE TIME.—A purchase by a trustee of trust property being.voidable merely, and not void, application by the beneficiaries of the trust to avoid it must be made within a reasonable time, and they must refund to the trustee the amount expended in the purchase, with interest, and also make compensation for improvements. (Page 51.)

4. APPEAL—INCONSISTENT POSITIONS.—Where, instead of seeking to hold a trustee who had purchased the trust property liable as such, the beneficiaries brought suit in chancery to annul his title on the ground. that they held the prior title, they will be bound by their election, and cannot, on appeal, ask that the trust be enforced. (Page 52.)

Appeal from Garland Chancery Court.

LELAND LEATHERMAN, Judge.

Reversed.

### STATEMENT BY THE COURT.

John J. Sumpter was in 1895 the owner of a one-third interest in lots 4 and 5 of block 112, of the city of Hot Springs, Garland County. On the 26th of June, 1895, one William Cameron recovered a judgment against Sumpter. On December 5, 1895, execution was issued on this judgment. On January 14, 1896, Sumpter gave a stay bond, staying this execution for six months. In July, 1896, Sumpter executed a deed conveying his interest in the lots to his mother, but the deed was dated as if executed on the 6th day of January, 1896. On September 12, 1896, an execution was issued on the stay bond. On the 18th day of the same month, Lula W. Cook and other creditors brought actions against John J. and William Sumpter in the Garland Circuit Court, and had writs of attachment issued, which

attachments were levied on the lots above described. Four days later certain other creditors brought a suit in the Garland Chancery Court in the nature of a creditors' bill, seeking to have certain conveyances made by John J. Sumpter, among them the deed from him to his mother conveying the lots named above, set aside as fraudulent and void as to creditors. On October 9, 1896, the execution issued on the bond staying the Cameron judgment was levied on the lots above described, upon which the writs of attachment had also been levied. On October 31, 1896, the lots were sold under the stay-bond execution, and bought by Cameron, the execution-creditor. On January 9, 1897, Lula W. Cook and other creditors also filed a creditors' bill against the Sumpters to set aside fraudulent conveyances. On June 30, 1897, the two creditors' bills above referred to were consolidated. On January 6, 1898, the sheriff executed a deed to Cameron, conveying him one-third interest in lots 4 and 5, which he purchased at execution sale. On January 28, 1898, the plaintiffs in the attachment suits and creditors' bills made application for the appointment of a receiver to take charge of the property attached and involved in the litigation, and the court, on the 28th day of that month, made an order to that effect. The order recites that the property is valuable, and yields monthly rentals aggregating about $700 a month, and "that it is proper and necessary for the preservation of the property for the benefit of plaintiffs and other creditors of John J. and William Sumpter that a receiver should be appointed to take charge of said property, rent the same out, and collect the rents accruing therefrom, and that said application of plaintiffs should be granted. It is therefore considered, ordered and adjudged that W. H. Martin be, and is hereby, appointed receiver of this court to take charge of all of said property at once, and that he be authorized, empowered and is hereby directed to rent the same to the best advantage for terms not exceeding twelve months," etc. The receiver was also empowered to make such repairs, pay taxes and such water and light charges as should be necessary for the preservation of the property. On the same day W. H. Martin qualified as receiver by giving bond for the faithful discharge of the duties of the office as required by the order of the court.

On February 14, 1898, Cameron conveyed the lots to M. E. Gaines. On April 4, 1898, appellant filed an amendment to the creditors' bill, praying that Cameron be made a party defendant; that he be enjoined from selling the land, and that the sheriff's deed to him be cancelled. On the day following M. E. Gaines conveyed the two lots to Mamie K. Martin, the purchase being made through her husband, W. H. Martin, the receiver, acting as her agent. On May 9, 1898, the final decree was rendered on the complaint of appellant and other creditors, setting aside all of the conveyances made by Sumpter as fraudulent and void to his creditors, and ordering them sold at public sale by W. H. Martin, the receiver, who was appointed commissioner for that purpose. This decree did not refer to the Cameron title.

On July 19, 1898, the deeds of Cameron to Gaines and of Gaines to Mrs. Martin were filed for record. On September 21, 1898, Mrs. Martin filed her intervening petition in the creditors' action, in which she claimed title to the lots through the deeds from the sheriff to Cameron, from Cameron to Mrs. Gaines, and from Mrs. Gaines to her, and asked that her title be quieted. On June 8, 1898, a one-third interest in the lots 4 and 5, belonging to another party, were sold by Belding, special commissioner, at public sale to Annie E. Little, Mary E. Sumpter and Losetta E. Fourbler, for the sum of $4,300.

On June 15, 1901, the plaintiffs in the creditors' bill filed a response to the intervening petition of Mrs. Martin, in which they set up that the lien acquired by them on the lots was superior to that acquired by Cameron, and that the deed from the sheriff to Cameron, from Cameron to Mrs. Gaines, and from Mrs. Gaines to Mrs. Martin conveyed no title. They further alleged that Mrs. Martin purchased the lots from Mrs. Gaines through her husband, W. H. Martin, acting as her agent. "That at the time of so purchasing said lots, for his wife, W. H. Martin held the same as receiver and as trustee for the plaintiffs, and his said act in so purchasing said lots was inconsistent with his duties as such receiver, and whatever benefits he obtained, or could have obtained, by such purchase will inure to the benefit of these plaintiffs." Wherefore they ask that the deeds under which

Mrs. Martin claims be cancelled and set aside, and for other relief.

Mrs. Martin filed an answer to this amendment and reponse, in which she alleged that her title was valid and superior to the liens acquired by plaintiffs. She further alleged that, at the time W. H. Martin was appointed receiver, the title to the lots had already passed to Cameron and his grantee, Mrs. Gaines, and she denies that he ever held such lots as receiver or as trustee for plaintiffs, and she therefore asked that her title to the premises be quieted.

On the hearing the chancellor found the issues in favor of Mrs. Martin, and rendered a decree quieting her title, from which decree plaintiffs appealed.

*Wood & Henderson,* for appellants.

The lien which Cameron acquired by the judgment of the circuit court was merged in the lien of the statutory judgment fixed by the execution of the stay bond. 29 Ark. 475; 20 Ark. 68; 14 Ark. 595, 568; 16 Ark. 599; 20 Ark. 98; 19 Ark. 265; 25 Ark. 469, 606; 12 Ark. 613; 67 Ark. 325. Appellants' lien was superior to any rights of Cameron by reason of his levy. 5 Am. St. 657; 36 Fed. 29; 17 N. E. 823; 22 N. E. 533; Black, Judg. § § 420, 454; 94 U. S. 300; 27 Fed. 420; 11 Ala. 988; 43 Pac. 1103; 61 Ark. 189. If Cameron's title is superior to appellants', appellee can only hold to the extent of lien for money paid as the purchase price. 24 N. E. 111; 64 N. W. 141; 77 N. W. 43; 82 N. W. 655; 39 Atl. 63; 14 Pac. 725; 39 S. W. 600; 23 Am. & Eng. Enc. Law, 1085; 53 Ark. 81.

*Rose, Hemingway & Rose,* for appellee.

The lien of the judgment was not destroyed by the stay bond. 57 Ark. 638; 32 Ark. 346; 17 Am. & Eng. Enc. Law, 807; 43 Am. Dec. 523; 63 *Id.* 708; 39 *Id.* 301; 2 Freeman, Judg. § 382. Cameron had first lien under the execution. 56 Ark. 292; Kirby's Dig. § 3227; 1 Freeman, Exec. § 207; 11 Am. & Eng. Enc. Law, 672; 42 Ark. 305. Appellee was not prejudiced by the decree of May 9, 1898. 16 Ark. 543; 28 Ark. 85, 523; 30 Ark. 111; 33 Ark. 328; 44 Ark. 92.

RIDDICK, J., (after stating the facts.)   This is a contest over the title of one-third interest in two lots in the city of Hot Springs, formerly owned by John J. Sumpter.   It is admitted that Cameron, under whom Mrs. Martin, the intervener, holds, obtained a judgment against Sumpter which was a lien on the lots before the attachment of plaintiffs was either issued or levied.   But it is said that Sumpter afterwards made a fraudulent conveyance of this property, and that after this conveyance was made he executed a stay bond, staying the Cameron judgment, and that the lien of the judgment was merged in that of the stay bond, and that the lien of the stay bond only relates back to the date of its execution.   But in this we think learned counsel for plaintiffs are in error, for in our opinion the lien of the judgment is continued in the stay bond, and this lien relates back to the rendition of the judgment, so as to protect the judgment creditor against subsequent liens or conveyances by the judgment debtor.   As the Cameron judgment antedated the attachment and the creditors' bill filed by plaintiffs, we think that the lien of this judgment took precedence over the lien acquired by plaintiffs, and it was not affected by the subsequent execution of the stay bond  or the fraudulent conveyance made by Sumpter.

It follows, from what we have stated, that the title of Mrs. Martin, who holds under the title acquired by Cameron by virtue of an execution on his stay bond and a sale of the lots under such execution, is superior to that of plaintiffs acquired by a sale under the subsequent attachment and creditors' bill, and must prevail over their title, unless there are equitable reasons why she cannot assert that title against them.   Now, this Cameron title to a one-third interest in these lots was purchased by W. H. Martin for the interevener, his wife, on April 5, 1898.   He purchased a one-third interest in the lots for his wife from Mrs. Gaines, to whom Cameron had conveyed it.   At the time he made this purchase for his wife he had charge of the property as receiver, having been appointed such receiver on the 28th day of January in the action by the creditors to subject this property to their claims against Sumpter.   The order appointing him receiver directed that he should take charge of the

property, collect rents, and pay taxes, and do other things necessary for the preservation of the property. There is no rule of equity better settled or more inflexible than that which declares that a trustee shall not deal with the trust property to his own advantage against the consent of the *cestui que trust*. "Absolute and most scrupulous good faith is the very essence of the trustee's obligation," says Prof. Pomeroy. The first and principal duty arising from his fiduciary relation is to act in all matters of the trust wholly for the benefit of the beneficiary. The trustee is not permitted to manage the affairs of the trust, or to deal with the trust property so as to gain any advantage, directly or indirectly, for himself, beyond his lawful compensation." 2 Pomeroy, Eq. Jur. 1075.

While a receiver is an officer of the court, he is also a *quasi* trustee, and occupies a fiduciary relation towards the parties to the action in which he is appointed; and both by reason of the fact that he holds the property as an officer of the court, and also occupies such fiduciary relation, he will not be permitted to deal with the trust estate for his own benefit or advantage. There is no reason why a distinction should be made between a receiver and other persons occupying a relation of that kind, and the decisions make none. It has often been held that a receiver occupies a fiduciary relation to the parties to the action, and is trustee for all of them who are interested in the property intrusted to his charge by the court, and he cannot deal with or purchase such property for his individual benefit or for that of any third party. "It is hardly possible," said the court in *Jewett* v. *Miller*, speaking of an attempted purchase by a receiver, "to state the rule of equity too broadly or too strongly. It will not permit a trustee to subject himself to the temptation which arises out of the conflict between the interests of a purchaser and the duty of a trustee. * * * The rule is entirely independent of the question whether in point of fact any fraud has intervened. It is to avoid the necessity of any such inquiry, in which justice might be balked, that the rule takes so general a form." *Jewett* v. *Miller*, 61 Am. Dec. 751; *Gilbert* v. *Hewetson*, 79 Minn. 326; *Donahue* v. *Quackenbush*, 75 Minn. 43; *Shadewald* v. *White*, 74 Minn. 208; *Donahue* v. *Quackenbush*, 62 Minn. 132; *Herrick* v. *Miller*, 123 Ind. 304; *Johnson* v. *Gun-*

*ter,* 6 Bush (Ky.), 534; *Thompson* v. *Holladay,* 15 Or. 34;
*Eyre* v. *McDonnell,* 15 Irish Chan. N. S. 534; 23 Am. & Eng.
Enc. Law (2d Ed.), 1085; High on Receivers, § § 193, 194.

But it is said that the rule does not apply here because
Martin, before he was appointed receiver, was the attorney for
Cameron, and obtained the judgment against Sumpter upon
which the execution and sale by which Cameron obtained the
title, was based. But this had nothing to do with the receiver-
ship, for, as stated in the brief of counsel who represented Mrs.
Martin here, his relation as attorney to Cameron had terminated
before he was appointed receiver. This is probably true, for our
statute expressly provides that "no party, or attorney, or other
person interested in an action shall be appointed receiver
therein." Kirby's Dig. § 6355. This statute is only declaratory
of what the law was before the statute (23 Am. & Eng. Enc.
Law, 1032), but it emphasizes the requirement that the receiver
must be and remain a disinterested and impartial agent of the
court and parties to the litigation. While it is conceded that
Martin's relations as counsel to Cameron had terminated before
he was appointed receiver, still, if this was not so, it could not
alter the decision. He could not lawfully act as receiver, and
hold the property for the attaching creditors, and at the same
time act as counsel for one contesting the rights of those cred-
itors; but if he undertook to do so, he would still be holding
this property as trustee; and if he attempted to buy it for him-
self or another, he would be met by the same unbending rule to
which we have referred. Even if we admit that he could, in
violation of the statute, continue, after being appointed receiver,
to act as counsel for Cameron, still this would not justify him
in purchasing an outstanding title; for it is no part of the duty
of an attorney to buy the interests of his client in litigated
property. It is not in the least necessary that he should do
so in order to protect the rights of his client, for his client could
sell to other parties, and Martin did not act for his client in
making this purchase for his wife. In fact, he purchased this
property, not from his client, Cameron, but from Mrs. Gaines,
to whom Cameron had sold and conveyed it. So we do not
see that the fact that the receiver had, previous to his appoint-

ment as such, been of counsel for Cameron has any bearing on this case.

If the fact that the title to this property had become vested in Cameron and the person to whom he sold justified the receiver in buying it for his wife, then the rule that forbids trustees from purchasing a title to the trust property antagonistic to the rights of their *cestuis que trust* would be of no avail. An exception to the rule that the trustee could purchase whenever the outstanding title was the superior title would completely nullify the rule, for the *cestuis que trust* can only be injured by such purchase when the title purchased is superior to that under which they claim. If the trustee purchases a title which is not superior to the one held by the *cestuis que trust,* he pays out his money for nothing; but when he buys a superior title, he could cut off the rights of the *cestuis que trust* completely, were it not for the rule that forbids him from setting up such title against those towards whom he stands in a fiduciary relation. The main reason of the rule is to shut off the trustee from such temptations.

We are perfectly willing to concede that the facts in this case show that the receiver was actuated by honest motives, and that he purchased the property for his wife because he had become convinced that the attaching creditors had lost the right to subject it to their debts by failing to redeem it from the Cameron sale, and that they could get no benefit from it, whether he purchased it or not. The fact that two of the judges of this court, after a full consideration of the case, have come to the conclusion that the receiver had the right to purchase is sufficient to acquit him of any blame in coming to the same conclusion. But, while we can all agree that the motives that actuated the receiver were honest, a majority of us think that his conclusion that he had a right to purchase this property for his wife was not sound in law. And, as we have before stated, the motives of a trustee in dealing with the trust property are not material; whether good or bad, the law holds that he can make no profit out of such transactions. If it had been shown that the property purchased by him had not been placed in his charge as receiver, the decision might be different; for the rule

only extends to the property held as receiver, and does not forbid the purchase of property not so held. But the record, as we understand it, shows that this property was placed in his charge as receiver; and it follows therefore from what we have said that his wife holds this property in trust for the creditors who were parties to the suit in which he was appointed receiver.

On the whole case, we are of the opinion that the decree should be reversed, and the cause remanded, with an order that out of the proceeds of the property Mrs. Martin be paid the amount expended by her for such Cameron title and the interest thereon, and that, upon the payment of that sum, she be divested of all interest in the property, and for such further proceedings as may be necessary. It is so ordered.

HILL, C. J., (dissenting.) It seems to me that the decision of the majority is a misapplication of a sound and salutary rule. That a receiver is a trustee, so far as his receivership extends, and that he is absolutely forbidden by public policy from profiting at the expense of the trust estate committed to him, is a doctrine commendable in morals and sound in law. This doctrine is not impaired in the least by sustaining Mr. Martin's purchase, as I understand the facts. The creditors suing Sumpter contended from first to last that the title of Cameron was invalid and their title paramount. After the Cameron title was perfected, and was, as held by the entire court herein, the paramount title, Mr. Martin was appointed receiver of all the property involved in the litigation, among other this property. His receivership extended only to the physical care of the property, renting it and collecting rents and other duties incident to the collection of rent and well-being of the property itself. He was not clothed with authority to look after the titles of the property, nor invested with any authority to preserve and conserve the interests of the estate other than in paying taxes, effecting insurance, collecting rents, and generally performing the duties of a real estate agent, in so far as the numerous tracts in litigation were concerned. As attorney for Cameron, he had successfully obtained this title for his client prior to his own appointment as receiver, and his adversary position in regard

to it was necessarily known to all before his appointment. His former client put this title on the market, and sold it, and, the purchaser failing to complete his purchase, Martin (acting for his wife) purchased it of the last purchaser, and paid the purchase price agreed upon.

In this he violated no duty he owed as receiver, for those duties did not extend to any such matter as this, and he took no advantage of any knowledge gained as receiver over any of the parties to the receivership, for he had procured this title in court himself before he became receiver. Nor is there any showing that his possession of the property gave him any advantage in the purchase. The attorney for the creditors was advised with about the title, and he gave his opinion that it was inferior to the creditors, and Mr. Martin was of the opinion that it was superior, and purchased on the faith of his legal judgment, and not from any matter growing out of his receivership. The majority holds that his opinion of the title was correct, and yet adjudge that he must hold this title so openly acquired in trust for the creditors, who always denied its validity, and brought this case here to have its invalidity pronounced. I think my brethren have erred in the application of the doctrine to the facts of the case.

Mr. Justice McCULLOCH concurs in this dissent.

ON REHEARING.

Opinion delivered May 27, 1905.

BATTLE, J. According to the opinion of this court heretofore delivered in this case, the sale by M. E. Gaines to Mrs. Martin was not void, but voidable by appellants. To avoid it, they must have made application to set it aside within a reasonable time, and paid Mrs. Martin the money expended by her in the purchase of the land and interest thereon, and compensated her for improvements, if any, made by her on the same. Instead of doing so, they, by an amendment to their complaint, in response to her motion to be made a party to this suit, sought to have her purchase and deed annulled, on the ground that they held liens on the land prior and superior to any right or title thereto acquired or claimed by her by virtue of her purchase. Upon this

ground they prosecuted this suit to a final decree in the chancery court, claiming and asking no benefit of her purchase.

Appellants were not bound to accept the benefit of Mrs. Martin's purchase. They had the right to reject it, and, having done so, are bound by their election. In *Adler-Goldman Commission Company* v. *People's Bank,* 65 Ark. 380, Smith made an assignment of all his property to Yarnell for the purpose of securing, in the order named, the following creditors: First, the People's Bank; second, J. C. Caldwell and J. M. Crabtree; third, the Adler-Goldman Commission Company; and, fourth, all other creditors. The People's Bank caused the property assigned to be attached. The assignee claimed the property, and the assignment was sustained. The People's Bank then sought to enforce its right of preference under the assignment. The court held that it elected to renounce the benefit of its preference, and, upon the assignment being sustained, it could not claim the benefit thereof.

In *H. B. Claflin Company* v. *Bretzfelder,* 69 Ark. 271, the court held, that "where a pledgee of stock elected to have it levied upon under attachment and condemned as the property of the pledgor, she thereby waived her right to enforce the pledge, although the attachment proceeding was ineffectual for want of a proper levy on the stock."

In both of the cases cited the appellants sought to enforce rights which they could not sustain against and in preference to their unquestionable rights. So, in this case appellants have sought to enforce liens against and in preference to the rights acquired by Mrs. Martin. · According to the opinion of the court in this case, they had the right to avoid the sale to Mrs. Martin, and take the property by reimbursing her. They waived this right by pursuing the course they followed. They are not bound to accept voluntary gifts, much less property wrested by the law from "unwilling hands" and offered to them on condition that they return to Mrs. Martin the price paid by her for the same and interest. Refusing to accept it, they cannot afterwards recover it by process of law.

Having renounced the benefit of Mrs. Martin's purchase in the chancery court, they cannot claim it in this court. They cannot occupy two such inconsistent positions. *McDonald* v. *Hooker,* 57 Ark. 632, 638. Having failed in a long contest to

set aside her title, they are not entitled to the fruits of her well-earned victory.

Decree affirmed.

RIDDICK, J., (dissenting.) I do not myself feel convinced that the creditors under the facts of this case waived their right to take the benefit of the purchase by the receiver for his wife, but that is a question which we did not consider in the former opinion. After Mrs. Martin filed her intervening petition claiming this property, the creditors, before the case was decided, filed a response, in which they set up, among other things, that Martin was a receiver in charge of the property at the time he purchased for his wife, and that whatever rights he or she acquired by the purchase inured to the benefit of the creditors, and they ask that her deed be set aside and "for other relief." They did not, it is true, offer to return to her the purchase price paid by her, but under the prayer for general relief I think the court should have granted them relief upon the equitable terms of repaying Mrs. Martin her expenses in making the purchase. For this reason I think the motion to rehear should be overruled.