DAWKINS, J.
As originally instituted, this was a suit for the appointing of a receiver to the defendant corporation. The application alleged the company to be amply solvent, and the owner of property valued largely in excess of its liabilities, but, because of the condition of the money market, it was unable to obtain advances for its planting operations for the year 1914; that it was unable to meet its obligations, and, in view of a resolution by its board of directors to that effect, a receiver should be appointed. The corporation, through its president, appeared 'and admitted the averments of the petition, and submitted the matter to the court’s judgment. Thereupon the court rendered judgment, appointing Firmin Reynaud receiver, and vested in him the following powers, to wit:
“It is further ordered that on his qualifying, by making oath and giving bond as receiver, said Firmin Reynaud be and he is hereby authorized to take charge of all the property and business of the Uncle Sam Planting & Manufacturing Company, and to hold, administer, manage, and dispose of the property and income of said corporation as may be ordered from time to time by this court; and in order that he may carry on the business of said Uncle Sam Planting & Manufacturing Company, and to operate said Uncle Sam plantation, said receiver is hereby authorized to borrow or obtain money on certificates of indebtedness to be issued and to be secured in manner and form as provided by law, and considering the fact that in order to pay the state and parish taxes assessed against the said Uncle Sam plantation for the year 1913, amounting to fully $1,500, and the further fact that it is necessary to borrow at once the further and additional sum of $3,500 to operate said plantation, it is ordered that the receiver, Firmin Reynaud, be and he is hereby authorized to' borrow at once the sum of $5,000, and in view of the fact that an emergency has arisen, where this loan should be made without delay, and the circumstances are such as to dispense with the entry in the receivership order book of the notice prescribed by section 8 of Act No. 159 of 1898, it is ordered that the delays and formalities prescribed by the section of the act of 1898 be and the same are hereby dispensed with, and that this order take effect at once.
“It is further ordered that an inventory, with appraisement, of all the property belonging to the Uncle Sam Planting & Manufacturing Company be made according to law by John D. Lambremont, notary public of the parish of St. J ames.”
After qualifying, Reynaud -entered upon the discharge of his duties, and operated the Uncle Sam plantation during the years 1914, 1915, and 1916. On January 10, 1917, Jules J. Jacob, Jr., alleging himself to be a stockholder and president of the Uncle Sam Planting & Manufacturing Company, jointly with Miss Marie Jacob, and Mrs. Edith Jumonville, also alleging themselves to be stockholders, appeared in the receivership proceedings for themselves and for the corporation, and sought to have the receiver removed. They alleged that he had been appointed by consent; that the plantation had been successfully operated during the years 1914r-1916, producing a large surplus, and *1009 that a-11 ordinary debts had been paid; that on January 1, 1917, petitioners had received from the receiver a letter notifying them that he had decided to stop all work on the plantation, and making a demand to “settle our account and decide what should be done this year, 1917”; that on receipt of this letter petitioners concluded that said Reynaúd was not willing to continue any longer as receiver, and they had requested him to resign, which had been refused; that petitioners had demanded that he, the receiver, authorize petitioner (Jules J. Jacob, Jr.) to proceed with the administration of the plantation, and which was also refused by Reynaud. Further charges were made against the receiver, and the petition concluded with the charge that a receiver was no longer necessary and the property should be returned to the corporation. It was also alleged that Reynaud was not a fit person for the management of the affairs of the corporation, in that he had exacted one-half of the capital stock thereof as a consideration for advances to make the crops of 1915 and 1916. Attack was made upon Reynaud’s title to the stock in question, and it was further alleged that—
“Petitioners are able to borrow money necessary to pay the balance due on the mortgage notes outstanding and the advances necessary to cultivate the plantation for 1917, but said Reynaud is taking advantage of his official capacity as receiver to defeat the endeavors of petitioners.”
The prayer asked for the annulling of the order appointing Reynaud receiver, that he be enjoined from interfering with the management of the plantation, that the stock mentioned be restored to the corporation, and that he be ordered to file his account as receiver.
In response to a rule to show cause on this petition, the receiver appeared and excepted on the ground that it contained separate and distinct demands unrelated and improperly joined in said proceeding, that they were against him both individually and as receiver, and that plaintiffs were without right to sue in the receivership proceeding for the annulment and return of the 750 shares of capital stock which it was charged had been illegally acquired by Reynaud individually.
On January 17, 1917, the receiver filed his final account, and on the trial of the above exception the same was sustained; the judgment reciting that, in view of the filing of the account, and inasmuch as the receiver had delivered possession and control of its property to the Uncle Sam Planting & Manufacturing Company, through its president, Jules J. Jacob, Jr., the rule should be discharged, and the right of plaintiffs to proceed by separate action, or opposition to the final account, for the rescinding of the transfer of the capital stock, be reserved without prejudice to either side.
Thereafter these same plaintiffs, for themselves and for the corporation (the receiver having filed his final account as above set forth), filed a joint opposition to the final account of Reynaud, receiver, alleging that he had failed to account for certain notes belonging to the company, as well as 750 shares of the capital stock, which they alleged had been unlawfully issued to him. They further objected to the account, on the ground that the receiver was wrongfully attempting to apply the sum of $44,743.46 to the mortgage notes, which they charged had been paid.
On the trial of the account and opposition thereto, the notes referred to were produced, and all other matters were disposed of, apparently satisfactorily to the parties, save and except the issue as to whether or not the receiver should be compelled to account for and surrender the 750 shares of capital stock, alleged to have been illegally issued. In order that the discussion herein, after may be properly understood, we quote *1011 the pertinent parts of the opposition with reference to the stock, as follows:
“(4) [Aver that] 750 shares of stock of the Uncle Sam Planting & Manufacturing Company, 680 shares of which' are the property of the Uncle Sam Planting & Manufacturing .Company, never having been issued by said company legally, and which are now in the possession and name of Eirmin Reynaud, and 70 shares of which are the property of your three petitioners individually.
“Your opponents represent that said shares of stock were obtained by said Eirmin Reynaud on the 6th day of January, 1915, by violence and duress, and during the time that he was exercising the functions of receiver of the Uncle Sam Planting & Manufacturing Company, by virtue of a pretended contract entered into on said 6th day of January, 1915, between your opponents, their father, who was then one of the stockholders of said corporation, and Eirmin Reynaud himself.
“Your opponents aver that, when said Fir-min Reynaud was appointed receiver, the orders of the court and the power given to him were to take possession of and conti’ol of all of the assets of Uncle Sam Planting & Manufacturing Company, and preserve the same as a going corporation, and cultivate the plantation of said corporation, for the benefit of all concerned, the corporation, its stockholders, and creditors; that the functions of said corporation were completely suspended, and were under the charge and control of this honorable court; that neither the president of the corporation, nor its board of directors, nor its stockholders had the right to dispose of any of its assets; that the said assets, including the treasury stock as aforesaid, could only be disposed of by the receiver under and by virtue of an order of court previously obtained in due course of law, which was never done.
“That, in order to obtain a semblance of title, said Reynaud notified your opponents that they should enter into a contract with him, which is hereto annexed and made a part hereof, by virtue of which he would make the advances for two years, 1915 and 1916, to cultivate the plantation, which should be repaid to him out of the proceeds of the crop and in consideration of said advance 750 shares of stock should be transferred to him in full ownership; that is, one-half of the capital stock of said corporation.
“Your opponents aver that said contract was and is null and void, for the following reasons, to wit:
“(1) That your opponents, on the 6th day of January, 1915, did not control- or possess the stock, and had no power to dispose of same; that the receiver and opponents did not stand on equal footing to contract.
“(2) Because there was no consideration paid by said Eirmin Reynaud for- said stock; that the pretense of making advances and on taking chances on losing his advances were not well founded, inasmuch as the disbursements and expenses incurred by a receiver to a going concern under orders of court were and aré to be paid by preference over all other creditors, including the mortgage which then existed on said plantation.
“(3) Because neither the corporation nor its receiver could under the Constitution of this state issue the treasury stock without consideration.
“(4) Because the consent of your opponents was not voluntarily given; that said Reynaud had given his ultimatum, and they were compelled under their present necessities to sign the agreement, ‘being inspired by a just fear of great injury to their fortune.’
“(5) Because the intent of the agreement extorted from your opponents was not a ‘lawful purpose,’ the intent being to benefit the receiver in obtaining enormous fees, not contemplated by law, and which would not be sanctioned by this honorable court; that it was against the public policy of the state for a receiver to spoliate the estate placed under his charge by the court; that the receiver has charged the legal fees which he considered himself entitled to, and your opponents have allowed his accounts to be approved by this honorable court in that regard without opposition, and, having claimed and received the compensation he considered himself entitled to, he can claim no more; that this receiver was in charge of a going concern, and under the law the court is to fix the compensation which he is entitled to receive, and he can charge and receive none without the approval of this honorable court.
“(6) Because the receiver is the hand of the court and the exercise of his functions are under the responsibility of the court, and it is against good morals and public policy for this court to allow a receiver to absorb half the estate he is charged to conserve and administer over and above his fees.”
The receiver appeared., and, styling himself “defendant,” excepted to the opposition on the ground that it contained separate and distinct demands, having nothing to do with the receivership; that the stock transaction *1013 was a matter between the stockholders and Eirmin Eeynaud individually; that there is a misjoinder of parties plaintiff, and that the opposition does not allege that the Uncle Sam Planting & Manufacturing Company has been authorized to prosecute the action; that there is an improper cumulation of actions, and an attempt to obtain against Eeynaud individually a personal judgment, without citation, in a summary proceeding, and in a mere opposition to his final account.
On the same day the receiver also filed a plea of estoppel, alleging that the plaintiffs had for more than two years acted upon the said contract, receiving the benefits thereof, etc., and that they could not at that late date be heard to repudiate the same. In the same document, reserving the benefit of all of the exceptions and pleas previously urged, the receiver proceeded in the alternative to “answer” all of the averments of the opposition in detail, and in which the validity of all of his acts and doings was claimed. He prayed that his exceptions and pleas be maintained, and, in the alternative, that the demands of the opponents be rejected, at their costs.
The exceptions and pleas were overruled by the court below, and on a trial of the merits there was judgment sustaining the opposition, annulling the transfer of 680 shares of the stock, and nonsuiting the demand of the opponents as to the other 70 shares. However, the fees of the receiver were increased over the amount claimed on the account, $1,200, to $12,287.
Both sides have appealed.
Opinion.
[1] The first question which presents itself is: Have the opponents the right to attack the transfer of the stock in the Uncle Sam Planting & Manufacturing Company to Eeynaud individually, in an opposition to his final account as receiver? The answer to this question depends upon the other proposition of law, as to whether or not contracts or transactions by a receiver in dealing with the corporation and stockholders as to the property or affairs of the estate under his charge are void or merely voidable. If void, they may be ignored altogether, because, since they never had any existence, no one is bound thereby, and their nullity may be pleaded wherever and whenever the occasion arises. On the other hand, if merely voidable, they may, be ratified by those in whose favor the right to avoid exists, or under proper conditions equitable circumstances may arise which preclude their being ¿attacked altogether.
Turning to the law of contracts, we find the following in Elliott on Contracts, vol. 1, p. 737, § 506:
"Rights, Powers and Liabilities of Trustees. —A trustee is not permitted to derive personal gain from Ms management of the trust estate. All profits made by him in its management must be accounted for to the trust estate. Moreover, all profits made in transactions in which a trust fund or property is used, notwithstanding such transaction is conducted with the individual name of the trustee, belongs to the trust estate. His purchase or lease of the trust property is voidable, and will generally be set aside at the instance of the cestui que trust or some one standing in his shoes.”
Numerous authorities are cited under this section, and we quote from one of them, which seems to be in point, as follows:
“The purchase by a trustee of trust property is not void, but only voidable at the instance of the injured party, or some one standing in his shoes, by a direct action.” Guy v. Mayes, 235 Mo. 390, 138 S. W. 510.
We quote further from High on Eeceivers (4th Ed.) p. 224, § 193, as follows:
"Receiver Cannot Purchase at His Own Bale —General Rule as to Trustees Applicable — Cannot Purchase in Home of Wife. — A receiver is regarded as occupying a fiduciary relation, in the sense that he will not be allowed to purchase for his own benefit property connected *1015 with or forming a part of the subject-matter of Ms receivership, or in his possession in that capacity. The courts will not permit him, any more than any other trustee, to subject himself to the temptation arising from the conflict between the interest of a purchaser and the duty of a trustee. If, however, he purchases property al an execution sale against a corporation over which he is appointed, the propriety of his action and the validity of the sale will not be considered in a suit tp redeem from the sale; and while a sale in which a receiver is interested as purchaser is presumptively irregular, the presumption is not conclusive, and the sale is not void but only voidable at the election of the beneficiary, whose subsequent conduct may prechide him from objecting to the sale."
See, also, Jackson v. First State Bank, 21 S. D. 484, 113 N. W. 876; Cook et al. v. Martin, 75 Ark. 40, 87 S. W. 625, 1024, 5 Ann. Cas. 204, and note, page 208.
“A purchase of corporate stock by a receiver at his own sale, through a third person, though irregular and voidable, is neither void nor subject to collateral attack.” Cook et al. v. Martin, supra.
[2] The law seems to be, therefore, that thé purchase by a receiver of property belonging to the estate in his charge is not void, but voidable, and the same cannot be questioned in a collateral attack, but must be tested in a direct action. In the present case it is not the tangible physical property of the corporation, which he had under his direct administration, that he is charged with having required, but stock in the corporation, some of which was owned individually by the stockholders, and other shares issued to him through the action of all of the stockholders and officers of the corporation, for a consideration which they, at the time, evidently considered very valuable. For a period of two years, both the corporation and its stockholders accepted the benefits of that consideration, and the record indicates very strongly that, but for it, they would have lost the entire property.
We shall not go into a discussion of the merits of the case at this time, for, under the view of the case which we have taken, it is possible that it may come back to us in another form for the determination of those issues. Suffice it to say, however, that if the transaction had been one between ordinary individuals, without the intervention of the technical relation of receiver on the part of Reynaud, it is not likely that the courts would have been called upon to deal with it.
We think that the attack made upon the transfer of the 750 shares of stock alleged to have been made to Reynaud in an opposition to his final account as receiver was improper, and the exception to the action in that form should have been sustained, and the parties relegated to a direct suit, where they would all be on an equal footing, with the right to trial by jury, etc.
For the reasons assigned, the judgment appealed from is annulled and set aside, and it is now ordered, adjudged, and decreed that the account be amended, so as to include the notes described in the opposition, and that, as thus amended* it be homologated and approved, and the receiver discharged, and that otherwise the opposition be dismissed, reserving opponents’ right to pursue a direct action as to the stock, the opponents to pay the costs of this appeal, and the receivership to pay the costs of the lower court.
PRO YO STY and SUMMERVILLE, JJ., hold that the case should be decided on the merits.