DOUCET, Judge.
Plaintiff filed this suit against defendant for damages for wrongful conversion of a timber loading machine which plaintiff alleges was purchased from defendant on or about July 1, 1978. Defendant admitted taking possession but contends that he did so as owner. The trial court found that no contract of sale existed between the parties and accordingly ruled adversely to plaintiff, who now appeals, alleging manifest error was committed when the trial court found no agreement as to price, and disagreement *1306 as to conditions of the attempted transaction.[1]
The dispute arises out of an employment relationship between the parties. Holliday was a general contractor or producer for a paper mill and he had several subcontractors, including Haymon, working for him. The subcontractors were paid a specified price per cord of wood in return for cutting the timber and loading it for transportation to the mill. Mechanical loaders were used to expedite the process. Due to the machines’ cost, they were generally purchased on credit by Holliday, who then verbally arranged with a subcontractor to work a machine on the Holliday job and to pay on it at a specified weekly rate for each week that the machine was in use. Such a working relationship is common in the logging industry, where timber producers often employed the independent contractor classification (erroneously) anticipating avoidance from workmen’s compensation liability.
The evidence indicates that the machinery utilized is invariably purchased by the producer, who possesses the requisite credit to acquire, and then resold or leased to the individual who operates them or who is enterprising enough to hire one to do so. The evidence further indicates that the subcontractor is often led to believe that the machine will become his after the producer has withheld a sufficient number of payments from money otherwise due the operator-purchaser. Another characteristic of the arrangement is that the resale contract is conditioned upon the subcontractor remaining in the servitude of the producer for the duration of the installments. As a result of the stipulations in these agreements, and the substantial inequality in the relative bargaining strength of the parties, title rarely passes to the subcontractor.
The facts in the present case are as follows: On April 4, 1978, Holliday purchased from Sanders Trucking Company a new 1978 Gafner Iron Mule. The cash price was $83,500 but the purchase was financed by Holliday through Commercial Credit Equipment Corporation. After subtracting a cash down payment of $2,000 and a trade-in allowance of $5,000 for an old loader, the deferred balance was $33,516.00, payable in thirty-six (36) monthly installments of $931.00 each. The note was secured by a chattel mortgage. The loader was intended for Otto Franklin, however the mill would not let Franklin work the job, thus Holliday approached Haymon concerning taking over the machine. Haymon had previously acquired machines from Holliday and assumed payments, however in two instances the machines were traded in before fully paid. On a third occasion Haymon voluntarily released a machine to Holliday when he was unable to work due to inclement weather.
As to the machine involved in this suit, the parties reached an understanding that Haymon would take possession of it and pay $250.00 per week to Holliday for each week it was in use; the amount being deducted from sums due Haymon each week on the job. It was mutually agreed that Haymon would be responsible for necessary maintenance and repair and that if Haymon was unable to work for Holliday during a particular week there would be no obligation to make payment that week. The terms and conditions under which ownership of the machinery would vest in Hay-mon are in dispute. Despite the substantial property rights involved, the transaction was conducted in a most casual manner and the contract was never reduced to writing, perhaps due to the working relationship the parties enjoyed at that time.
As agreed, Haymon went into possession of the loader and used it in performing work for Holliday until May 15, 1980 when Holliday temporarily closed down his operation because of wet weather. Up until this time weekly deductions were made by Hol-liday from Haymon’s earnings; for a total withholding of $19,400.00.
When the job was shut down on May 15, 1980, Haymon made arrangements to work for another contractor. Shortly thereafter Holliday resumed operations and requested *1307 Haymon to return but was informed Hay-mon was satisfied with his new job arrangement and would not return. Haymon told Holliday that he wanted to pay off the machine and Holliday agreed he could do so, but the parties disagreed on the amount of the payoff. On or about June 30, 1980, Holliday, without the knowledge or consent of Haymon, took possession of the loader and put it to his own use.
Suit was filed by Haymon wherein he alleged that title passed unto him at the time of the agreement, thus the taking by Holliday without consent or judicial process constituted wrongful conversion. Holliday responded that he never divested himself of ownership. Alternatively, Holliday contended that if there was a sale, it was subject to a suspensive condition, to wit: that the machine remain on the Holliday job until payment was made by Haymon.
Haymon testified that it was his understanding that ownership would vest in him upon making the final payment. His payments approximated the amount due to the finance company. He understood the price to be “around $38,000.00” and in his petition alleges that he agreed to pay $38,516.00. He further agreed to pay for insurance, repair, and upkeep expenses. Holliday testified that he was to receive the amount owed the finance company, plus $7,000 equity, for a total payment of $38,654.00, and that the sale was conditioned upon Hay-mon’s continued employment at his job site. He further testified that Haymon was to forfeit all interest in the machine if he left his employ; all of which was contradicted by Haymon.[2]
Civil Code Article 2456 provides that a sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement or consent as to the object and price thereof, although the object has not yet been delivered, nor price paid. Thus, transfer of ownership is accomplished by operation of law as soon as there is concurrence as to the thing, price, and consent.
Accordingly, if the parties have agreed on the thing and the price, the sale is complete. The parties cannot validly agree that the seller will retain title to the object until payment of the purchase price, as Louisiana does not recognize the common law conditional sales contract for movable property. Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951). The effect of this law is that the seller is divested of ownership as soon as the buyer is unconditionally bound to pay the purchase price, and such contractual attempts to retain title until payment are of no effect.
For the sale to be effective, the price of the sale must be certain, that is to say, fixed and determined by the parties. La. Civ.Code art. 2464. When this element of a contract is susceptible of two interpretations, it must be understood in that which it may have some effect, rather than in a sense which would render it negatory. La. Civ.Code art. 1951. Where a contract is capable of construction in accordance with justice and fair dealing, courts will adopt such construction instead of one entailing loss to a party to the contract, Terrell v. Alexandria Auto Co., 12 La.App. 625, 125 So. 757 (2nd Cir. 1930); Ascension Red Cypress Co. v. New River Drainage Dist., 149 La. 764, 90 So. 165 (1922); as persons may be expected to contract with one another on a basis equitable to each. Texaco, Inc. v. Vermillion Parish School Bd., 244 La. 408, 152 So.2d 541 (1963). In a doubtful case the agreement is interpreted against the seller. La.Civ.Code art. 2474; Robbert v. Equitable Life Assur. Soc. of United States, 217 La. 325, 46 So.2d 286 (1950); Kemp v. Beasley, 188 So.2d 425 (La.App. 3rd Cir. 1966); Wurzlow v. Placid Oil Co., 279 So.2d 749 (La.App. 1st Cir. 1973); Lanier v. Trans-World Life Insurance Co., 258 So.2d 103 (La.App. 2nd Cir. 1972). This rule is particularly applicable where there is substantial disparity in the relative bargaining power between the parties.
*1308 The evidence indicates that Holliday understood the purchase price to be $38,-654.00, whereas Haymon, although unsure of the exact amount, understood the price to be approximately $38,000, and alleges in his petition that the agreed sum was $38,-516.00. In other words, the dispute in price concerns a sum of less than one percent. Haymon has paid in excess of $19,000 and presently has no machine to show for it. Applying the above rules of construction to the circumstances of this case we deem the price to be sufficiently “certain” so as to satisfy the codal requirements. Accord: Thomas v. Thomas, 63 So.2d 468 (La.App. Orl.1953); General Finance Corp. of New Orleans v. Harrell, 188 So.2d 211 (La.App. 1st Cir. 1966).
The evidence further shows that Holliday either failed to disclose, or misrepresented to Haymon, that the agreed purchase price contained no element of recovery of the former’s equitable interest ($7,000.00) in the machine. Although Hay-mon did not intend to pay any equity, he did agree to pay in excess of $38,000, or the amount demanded by Holliday. At trial, Holliday asserted, and the court accepted, the misunderstanding as to whether equity was included in the price as a basis for invalidating the contract. However, the effect of Holliday’s misrepresentation as to equity is not to absolutely void the contract, but to render it voidable at the option of the person defrauded. Vest v. Richardson, 253 So.2d 97 (La.App. 4th Cir. 1971); Fidelity Credit Co. v. Bradford, 177 So.2d 635 (La.App. 3rd Cir. 1965), writ refused 248 La. 430, 179 So.2d 273; Jacob v. Uncle Sam Planting and Mfg. Co., 144 La. 1006, 81 So. 604 (La.1919). This form of equitable es-toppel is founded on good faith and the seller’s duty to disclose.
Next, we address the issue of whether the sale was conditioned upon Haymon remaining in the servitude of Holliday until the full price of the machine was paid. Haymon immediately took possession of the machine, following the transaction, and assumed full responsibility for the repair and upkeep. When the Holliday job was closed due to wet weather Haymon secured another job. Upon reopening of the Holliday job, Haymon was offered his old position. It is highly improbable that Haymon would have refused this offer if the result of such was to forfeit all interest in the machine ($19,-400.00) as contended by Holliday. The jurisprudence is well established that informed and experienced parties do not ordinarily bind themselves to unreasonable, absurd, inequitable, or unjust obligations. In the case of Oil Field Supply and Scrap Material Co. v. Grifford Hill and Co., 204 La. 929, 16 So.2d 483 (1943), the Supreme Court expressed the following rule on interpretation of contracts:
“We know that a contract is the law between the parties and that they are bound by their agreements regardless of harmful consequences, provided the agreement is not contra bones mores or in violation of some prohibitory law. However, where the issue is as in the instant case — what are the terms of the verbal agreement — the fact that informed and experienced persons do not usually and customarily bind themselves to unjust and unreasonable obligations is a serious factor that must be taken into consideration in determining that question.”
The same principle was stated in Bondio v. Joseph Binder, Inc., 24 So.2d 398 (Orl.La. App.1946) as follows:
“In interpreting the contract, it is, of course, of primary importance to discover whether its provisions are clearly set forth and that they express the true intention of the parties. And, even if the words used are fairly explicit, it is our duty to refrain from construing them in such a manner as to lead to absurd consequences.”
These rules have been consistently applied in Louisiana jurisprudence: Texaco, Inc. v. Vermillion Parish School Board, supra; J.H. Jenkins Contractor, Inc. v. City of Denham Springs, 216 So.2d 549 (La.App. 1st Cir. 1968); East Contract Supply, Inc. v. Petite Paree Fashions, Inc., 250 So.2d 839 (La.App. 4th Cir. 1971); Coyle v. Louisiana Gas & Fuel Co., 175 La. 990, 144 So. 737 *1309 (1932); Lama v. Manale, 218 La. 511, 50 So.2d 15 (1950), 23 A.L.R.2d 1312; Hodges v. Decoteau, 314 So.2d 500 (La.App. 1st Cir. 1975); U.S. Daughters, Etc., v. La. Dept. of Culture, 395 So.2d 455 (La.App. 4th Cir. 1981); Giamonco v. Fairbanks, 255 La. 167, 230 So.2d 65 (1969); Terrell v. Alexandria Auto Co., supra; Ascension Red Cypress Co., v. New River Drainage Dist., supra. See also La.Civ.Code art. 1965. We find that there was no such condition to the contract. Additionally, for reasons aforementioned, the disguised conditional sale, wherein the seller sought to retain title until full payment of the purchase price, was of no effect and title vested in Haymon when the transaction took place.
Having concluded that a sale took place, the defendant had no right to seize possession of the machine from the plaintiff, and thus a wrongful conversion occurred. Conversion is a distinct act of dominion wrongfully exerted over another’s property in denial of or inconsistent with the owner’s rights therein. Lincecum v. Smith, 287 So.2d 625 (La.App. 3rd Cir. 1973) writ refused, 290 So.2d 904; La.Civ.Code art. 2315; Hamilton v. Travelers Indemnity Co., 248 So.2d 617 (La.App. 3rd Cir. 1971); Importsales, Inc. v. Lindeman, 231 La. 663, 92 So.2d 574 (1957). The damages for conversion consists of the return of the property, or the value of the property at the time of the conversion. Boisdore v. International City Bank & Trust Co., 361 So.2d 925 (La.App. 4th Cir. 1978), writ denied 363 So.2d 1384; Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1959); LaFleur v. Sylvester, 135 So.2d 91 (La.App. 3rd Cir. 1961). The evidence indicates the plaintiff’s interest in the machine on the date of conversion was $19,400.00. Accordingly, we herein award him damages in the sum of $19,-400.00. Plaintiff also makes a claim for loss of wages due to the loss of the use of the machine for 60 days following the conversion, however, there is insufficient evidence of any loss and thus demand must be denied.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be a judgment in favor of the plaintiff, J. Junior Haymon, and against the defendant, Dwayne Holliday, for the sum of $19,400.00 together with legal interest thereon from the date of judicial demand until paid, and all costs in the trial and appellate courts.
REVERSED AND RENDERED.

. The defendant did not answer the appeal.

. Three additional witnesses testified to the effect that Holliday had made similar “sales” agreements as the one Haymon accepted, making Holliday’s proposition that the arrangement was a lease with option to purchase highly questionable.