464 So.2d 410 (1985)
Rory O. HOLLEY and Sherman Jordan
v.
David SINGLETARY.
No. 84 CA 0082.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
*411 G. Brice Jones, Slidell, for plaintiffs, appellees.
Joseph P. Anderson, Jr., Slidell, for defendant, appellant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
David Singletary appeals a judgment in favor of plaintiffs, Rory O. Holley and Sherman Jordan, awarding them damages for tortious conversion of a boat purchased by them from defendant.
The issues are: (1) whether there was a sale of the boat or merely a promise to sell; (2) whether either defendant or plaintiffs are liable for conversion of the boat; and (3) damages.
We affirm.
This controversy arose out of an alleged sale by defendant to plaintiffs of an open boat rigged for shrimping. Sometime in April, 1980, pursuant to a verbal agreement, plaintiffs gave defendant the sum of $2,000 for the boat, on an agreed total purchase price of $2,500. Testimony was conflicting as to when the remaining $500 was to be paid. No written contract or bill *412 of sale was executed, and title to the boat was not transferred to plaintiffs. Thereafter, the boat remained moored at defendant's dock on the West Pearl River while plaintiffs did some work on the boat to prepare it for the spring and summer shrimping season.
Two to three weeks later, plaintiffs moved the boat from defendant's dock and tied it up a short distance down the river, next to the houseboat of defendant's father-in-law. It is unclear whether either defendant or his wife was at home when the boat was moved. Plaintiffs subsequently used the boat to shrimp the entire season without paying the remaining $500 due. Defendant was fully aware of plaintiffs' shrimping activities. Throughout the season, plaintiffs docked the boat across the river from defendant's home.
On or about August 12, 1980, after the shrimping season was over, defendant noticed that the boat appeared to be sinking low in the water at its mooring, and called Jordan to express his concern. Because the boat's bilge pump was not functioning, pre-existing leaks were causing the boat to sink low. Jordan notified Holley, and the latter purchased a new pump which defendant installed in the boat. Thereafter, defendant retained possession of the boat with the apparent acquiescence of the plaintiffs, eventually moving it to his dock and raising it out of the river to make repairs. He subsequently sold the boat to a friend of his, Joe Billiot, for a few hundred dollars. Plaintiffs alleged that they were first informed of the boat's alienation when Holley returned to pay defendant the $500.
Plaintiffs filed suit for damages on two theories of recovery, breach of contract and tortious conversion. Defendant filed a reconventional demand for damages, alleging that he remained the owner of the boat because the purchase price was never paid in full, and that plaintiffs were guilty of converting the boat. The trial judge found that a sale had been completed and ownership of the boat had vested in plaintiffs; he further found defendant liable for wrongful conversion and awarded plaintiffs the return of the purchase price paid, $2,000; $1,250 in general damages; $250 in special damages; costs and interest from date of judicial demand. This appeal by defendant followed.
1. Defendant cites LSA-C.C. arts. 2462 and 2463[1] in support of his argument that the agreement between himself and plaintiffs was not a sale, but merely a promise to sell coupled with the giving of earnest money. He contends that plaintiffs agreed to pay the $500 within the following week or forfeit the $2000 already paid, as well as any repairs done on the boat in the meantime. His testimony was partially corroborated by Mr. Billiot, who testified that he was present when plaintiffs agreed to pay the rest of the purchase price within the week. Defendant argues that he did not intend to allow plaintiffs to remove the boat from his dock until they paid the $500. While maintaining that the boat was taken without his permission, he testified that he let the plaintiffs keep and use it for the full shrimping season, without protesting or demanding its return, because it was "a friendship deal".
*413 Plaintiffs cite LSA-C.C. arts. 2439 and 2456[2] in support of their position that the agreement was a sale which immediately vested ownership of the boat in them, despite defendant's retention of title. Plaintiffs gave slightly different versions as to when they agreed to pay the remaining $500 to defendant. Holley testified that they promised to pay whenever they could; Jordan testified that although no date was specified for payment, he did tell defendant that he'd pay the $500 out of his forthcoming income tax refund.[3] Both plaintiffs agreed that defendant did not place any restrictions on their taking possession of the boat after paying the initial $2,000.
The testimony on this issue of the nature of the agreement between the parties was conflicting, and it was necessary for the trial court to consider the credibility of each witness and determine for itself which testimony to accept and which to reject. Under these circumstances, and after reviewing the entire record, we do not find that the trial court erred in resolving the issue in plaintiffs' favor. The trial court obviously did not accept defendant's testimony in its entirety, and found the fact of plaintiffs' continued use of the boat, with defendant's agreement, inconsistent with a promise to sell.
The trial judge correctly concluded that if defendant did indeed intend to remain owner by retaining the title until the purchase price was paid, our law does not recognize the common law conditional sales contract for movable property. Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951); Haymon v. Holliday, 405 So.2d 1304 (La.App. 3rd Cir.1981). The parties cannot validly agree that the seller will retain title to the object until payment of the purchase price; the seller is divested of ownership as soon as the buyer is unconditionally bound to pay the purchase price, and contractual attempts to retain title until payment are thus of no effect. Haymon, supra; Banner Chevrolet, Inc. v. Kelt, 402 So.2d 747 (La.App. 4th Cir.1981). We thus do not find that the trial court's ruling on this issue is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Since we affirm the trial court's finding that a sale was perfected, we naturally must agree with the trial court's dismissal of defendant's reconventional demand for damages on the grounds of conversion.
II. Defendant next argues that the trial court erred in holding him liable for wrongful conversion.
The common law tort of conversion is recognized by Louisiana courts as a quasi offense under LSA-C.C. art. 2315. Edward Levy Metals, Inc. v. New Orleans Public Belt Railroad, 243 La. 860, 148 So.2d 580 (1963). Conversion has been jurisprudentially defined as any act of dominion over another's property in denial of or inconsistent with the owner's rights. Arena v. K Mart Corp., 439 So.2d 528 (La.App. 1st Cir.1983), writ denied 443 So.2d 585 (1983).
Plaintiffs alleged that they did not initially protest when defendant took possession of the boat, but that when they later tendered $500 to defendant, they were informed the boat had been sold. The testimony of the attempted tender was corroborated, although defendant denied it. Defendant did admit that he moved the boat from where plaintiffs had it moored, pulled it from the river, and eventually sold the boat to another. There may have been permission (by acquiescence) from the *414 plaintiffs for defendant to retain possession of the boat, but there clearly was no consent given to alienate their property. Defendant's mistaken belief that the boat belonged to him is no defense. 89 C.J.S. Trover and Conversion, § 7 (1955); W. Prosser, Handbook of the Law of Torts, p. 83 (4th ed. 1971).
III. Defendant makes an oblique reference to LSA-C.C. art. 3418[4] and we assume that he is arguing that his taking of the boat was not wrongful because the boat was abandoned by plaintiffs. We find no merit in this argument.
IV. Defendant contends that the trial court committed error in its award of damages. The trial court awarded plaintiffs the return of the $2,000 paid on the purchase price; $250 for the loss of movable items owned by plaintiffs and retained by defendant when the latter converted the boat; and $1,250 in general damages.
Traditionally, damages for conversion consist of the return of the property, or if it cannot be returned, the value of the property at the time of the conversion. Holland v. First National Bank of Crowley, 398 So.2d 186 (La.App. 3rd Cir.1981); Boisdore v. International City Bank & Trust Co., 361 So.2d 925 (La.App. 4th Cir. 1978), writ denied 363 So.2d 1384 (1978). Where there is a security interest, this value corresponds with a plaintiff's equitable interest in the property. Samaniego v. Horseless Carriage, Inc., 350 So.2d 193 (La.App. 2d Cir.1977), writ denied 352 So.2d 240 (La.1977). Where there is no evidence of the market value of the property at the time of its taking, a plaintiff's equitable interest in the property may be determined as the amount paid on the purchase price. Samaniego, supra.
The condition of the boat at the time of its conversion by defendant was disputed. If its condition was not the best, there is sufficient evidence to conclude that most of the boat's problems existed at the time it was purchased by plaintiffs. Although the exhibits itemizing plaintiffs' repairs and purchases for the boat are not in the record on appeal, plaintiffs testified to substantial work put into the boat. The defendant and his witnesses asserted that the boat was in poor condition, but the only testimony as to market value was defendant's statement that he would have sold the boat for three or four hundred dollars, had anyone offered to buy it.
We must presume that the trial judge evaluated and considered the exhibits submitted by plaintiffs, as well as the testimony summarized here. We find no error in his determination of the boat's value.
Similarly, we find no error in the award of $250 for certain movable items on the boat when it was converted, which plaintiffs never recovered. There was ample testimony to support the award.
Finally, defendant argues that the award of $1,250 in general damages is excessive. After reviewing the circumstances urged by defendant as justifying a decrease in this award, we are of the opinion that the trial court's award for embarrassment and inconvenience, while perhaps at outer limits, is not manifestly excessive.
Accordingly, for the foregoing reasons, the judgment below is affirmed; defendant is to pay all costs of appeal.
AFFIRMED.
GROVER L. COVINGTON, C.J., concurs.
NOTES
[1] LSA-C.C. art. 2462 provides:

"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.
One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."
LSA-C.C. art. 2463 provides:
"But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double."
[2] LSA-C.C. art. 2439 provides:

"The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."
LSA-C.C. art. 2456 provides:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
[3] He admitted that he used the refund to pay his past-due house note instead.
[4] LSA-C.C. 3418 provides, in pertinent part:

"... A thing is abandoned when its owner relinquishes possession with the intent to give up ownership."